UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY ROACH,

    Petitioner,        Hon. Janet T. Neff

v.               Case No. 1:13-CV-42

BONITA HOFFNER,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This matter is before the Court on Roach's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Roach's petition be **denied**.

## BACKGROUND

    As a result of events which occurred on January 2, 2009, Petitioner was charged with armed robbery.  (Trial Transcript, August 20, 2009, 9).  Several individuals testified at Petitioner's jury trial.  The relevant portions of their testimony are summarized below.

**Richard Daly**

In the early morning hours of January 2, 2009, Daly was working at Deb's One Stop, a gas station/convenience store. (Trial Transcript, August 20, 2009, 79-81). At approximately 5:45 a.m., Petitioner entered the store wearing a "black sweatshirt with the hood pulled up." (Tr. 81-87). Several other customers were also present in the store. (Tr. 85). Petitioner purchased two items and exited the store. (Tr. 85-86).

Approximately ten minutes later, Petitioner re-entered the store at which point there were no other customers present. (Tr. 90). Petitioner approached Daly and instructed him to open the cash register. (Tr. 91-92). Daly refused at which point Petitioner brandished a knife. (Tr. 93). Daly again refused to open the cash register. (Tr. 94). Petitioner then began to walk behind the counter at which point Daly agreed to open the cash register. (Tr. 94-95). Daly then removed the money from the cash register and gave it to Petitioner who exited the store. (Tr. 95-97). Daly immediately called 9-1-1 to report the robbery. (Tr. 98). Daly then called the store's owner, Deborah Denney. (Tr. 99).

Two days after the robbery, police presented Daly with a photographic lineup. (Tr. 100). While Daly was unable to definitively identify the assailant from the lineup, he indicated that one of the individuals depicted in the lineup was "probably" the person who robbed the store. (Tr. 100). The individual Daly identified was Petitioner. (Trial Transcript, August 20, 2009, 100; Trial Transcript, August 21, 2009, 36-37).

**Deborah Denney**

Denney owned the store that was robbed on the morning in question. (Trial Transcript, August 20, 2009, 130). The store was equipped with a video surveillance system consisting of four outside cameras and three inside cameras. (Tr. 130). Following the robbery, Denney downloaded the relevant video footage to a thumb drive which she then provided to the police. (Tr. 130-32).

**Brent Faulk**

Faulk testified that he had known Petitioner "almost my whole life." (Trial Transcript, August 20, 2009, 134-35). On or about January 2, 2009, Faulk was contacted by the Sheriff's Department and asked to examine a still photograph retrieved from the convenience store surveillance video. (Tr. 109-11, 135-37). Faulk examined the photograph in question and identified the individual therein as Petitioner. (Tr. 135-37).[1]

**Richard Bates**

Bates met Petitioner in January 2008 after which he encountered him on a regular basis. (Trial Transcript, August 20, 2009, 140). Bates estimated that he had personally encountered Petitioner 20-30 times. (Tr. 140). After examining the same photograph that had been shown to

---

[1] Faulk's knowledge of Petitioner arose from his relationship as Petitioner's parole or probation agent. (Dkt. #23). While the trial judge permitted Faulk to offer an opinion as to whether Petitioner was the individual depicted in the surveillance photographs, the judge precluded the prosecution from eliciting from Faulk the nature of his relationship with Petitioner or the context in which he knew Petitioner. (Dkt. #23).

Brent Faulk, Bates identified the individual therein as Petitioner.  (Tr. 140).[2]

**Matthew Madsen**

    Madsen testified that he had worked for the Calhoun County Sheriff's Department for the previous ten years.  (Trial Transcript, August 21, 2009, 6-7).  During this time, Madsen had personal contact with Petitioner.  (Tr. 7).  Madsen examined the same photograph that had been shown to Brent Faulk and identified Petitioner as the individual therein.  (Tr. 7-8).

**Vicky Latimer**

    Latimer reported that she had worked for the past 15 years for the Calhoun County Sheriff's Department during which time she had personal contact with Petitioner on more than twenty occasions.  (Trial Transcript, August 21, 2009, 12-14).  Latimer examined the same photograph that had been shown to Brent Faulk and identified Petitioner as the individual therein. (Tr. 14-15).

**Jennifer Diepenhorst**

    Diepenhorst testified that she had worked the previous five years as a road patrol officer for the Calhoun County Sheriff's Department.  (Trial Transcript, August 21, 2009, 25).  On the morning of January 2, 2009, Diepenhorst was dispatched to the Deb's One Stop gas

---

  [2]  Bates' knowledge of Petitioner arose from his relationship as Petitioner's parole or probation agent.  (Dkt. #23).  While the trial judge permitted Bates to offer an opinion as to whether Petitioner was the individual depicted in the surveillance photographs, the judge precluded the prosecution from eliciting from Bates the nature of his relationship with Petitioner or the context in which he knew Petitioner.  (Dkt. #23).

station/convenience store to investigate an armed robbery.  (Tr. 26-27).  After arriving at the scene, Diepenhorst interviewed Richard Daly and Deb Denney.  (Tr. 27-29).  As part of her subsequent investigation, Diepenhorst learned that, as of the date of the robbery, Petitioner's mother lived less than one block from Deb's One Stop convenience store.  (Tr. 30-31).

Diepenhorst also presented to Richard Daly a "photo line-up. . .a photo array of various individuals of similar characteristics."  (Tr. 36).  Petitioner's photograph was part of this photo array.  (Tr. 36).  The photograph of Petitioner that was included in the array had not been taken recently.  (Tr. 37-38).  Daly was unable to make a definitive identification, but he did state that the photograph of Petitioner was "very similar" to his assailant except that the man who robbed him was "thinner in the face."  (Tr. 37).

Following the presentation of evidence, the jury found Petitioner guilty of armed robbery.  (Tr. 79-80).  Petitioner was sentenced, as an habitual felon, to serve 15-30 years in prison.  (Sentencing Transcript, September 17, 2009, 5-6).  Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I.   The trial judge's decision to permit five law enforcement officers - three of them identified as such - to identify defendant-appellant Timothy Roach from surveillance photos was an abuse of discretion.
>
>   A.   The law enforcement officers' lay opinion testimony was at most minimally relevant where Mr. Roach's appearance had not changed appreciably since the robbery and where the witnesses were not particularly familiar with him.
>
>   B.   The testimony was substantially more prejudicial than probative where it

5

was obvious that the corrections officers' many contacts with Mr. Roach were from previous jailings, and where counsel could not effectively cross-examine the parole and probation officers.

II.    The trial judge abused his discretion in denying requests to discharge/withdraw court appointed counsel where the attorney/client breakdown in the relationship was obvious and was requested with timely notice by defendant and counsel.

III.    Due to the trial judge's denial of requests/motions for new appointed counsel, the deficient performance of same counsel prejudiced the defendant and deprived him of the right to a fair trial.

IV.    Where identification was a key issue leading to conviction, the prosecution deprived Timothy Roach of his right to due process and a fair trial under the Fifth Amendment when he committed prosecutorial misconduct during closing and rebuttal arguments by misstating testimonial evidence regarding six of his identification witnesses.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Roach*, 2011 WL 240533 (Mich. Ct. App., Jan. 25, 2011). Asserting the same issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Roach*, Case No. 142788, Order (Mich., July 20, 2011). Petitioner subsequently moved in the trial court for relief from judgment asserting the following claims:

I.    Defendant was denied his constitutional right to a fair trial where after the commencement of jury deliberations, the trial judge allowed ex parte contact with the jury from the prosecution off the record.

II.    Defendant was denied his constitutional right to a fair and impartial jury when the trial judge failed to

6

adequately question juror #811, Dannette Feltner, during voir dire.

The trial court denied Petitioner's motion. *People v. Roach*, Case No. 09-1688-FC, Order (Cir. Ct. Calhoun Cnty., Nov. 9, 2011). Asserting these same two claims, Petitioner moved in the Michigan Court of Appeals for leave to appeal. Petitioner's request was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Roach*, Case No. 308287, Order (Mich. Ct. App., Mar. 16, 2012). Petitioner's subsequent motion in the Michigan Supreme Court for leave to appeal was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Roach*, Case No. 145017, Order (Mich., Nov. 20, 2012). Asserting the six issues identified above, Petitioner initiated the present action on January 14, 2013.

## STANDARD OF REVIEW

Roach's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)    resulted in a decision that was based on an

7

> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at

411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."

9

*Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.        Identification Testimony**  (Habeas Claim I)

Petitioner advances two claims related to the identification testimony offered by: (1) Brent Faulk; (2) Richard Bates; (3) Matthew Madsen; (4) Vicky Latimer; and (5) Jennifer

Diepenhorst.  Petitioner first asserts that the trial judge abused his discretion by permitting any of these individuals to testify on the question whether Petitioner was the individual depicted in the surveillance video.  Petitioner next asserts that his Sixth Amendment right to confront the witnesses against him was violated by the trial judge's ruling precluding testimony by Faulk or Bates indicating the nature of their relationship with Petitioner.

A.      Identification Testimony

Petitioner argues that the identification testimony offered by the individuals identified above violated his right to a fair trial.  At the outset, however, the Court must address Respondent's claim that this Court lacks the authority to review the merits of this particular claim.

While Petitioner asserted on direct appeal that the trial judge erred by allowing the testimony in question, he did not assert that such violated his federal constitutional rights.  Instead, Petitioner argued that such violated Michigan evidentiary law.  Petitioner, likewise, did not assert this issue in his post-conviction motion for relief.  Thus, because Petitioner never presented to the Michigan courts his claim that the introduction of this testimony violated his constitutional right to a fair trial he has not properly exhausted this claim.  *See* 28 U.S.C. § 2254(b)(1)(A); *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008) (the exhaustion requirement "is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims").

Furthermore, Petitioner is unable to return to state court and exhaust this issue by filing a motion for relief from judgment.  Michigan court rules provide that a defendant can file only

one such motion, *see* M.C.R. 6.502(G)(1), and Petitioner has already filed his.[3]  When a petitioner

has failed to properly exhaust a particular claim, and there exists no available remedy by which such

failure can be corrected, the Court must determine whether there exists cause and prejudice to excuse

his failure to present the claim in state court.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996);

*Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has failed to demonstrate that there exists

cause or prejudice for his failure to properly exhaust the claim in question.  The Court is, therefore,

precluded from addressing the merits of this claim.  Even if Petitioner could make such a showing,

however, the result is the same as this claim is without merit.[4]

Generally, errors by a state court on matters involving the admission or exclusion of

evidence are not cognizable in a federal habeas proceeding.  *See Ege v. Yukins*, 485 F.3d 364, 375

(6th Cir. 2007) ([a]ny review of habeas due process claims based on improper admission of evidence

must be cognizant of the Supreme Court's mandate that 'it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions'").  This standard is quite

deferential and permits relief "only if an evidentiary ruling is so egregious that it results in a denial

of fundamental fairness."  *Id.*  Fundamental fairness does not, however, "require a perfect trial,"

---

[3]  The Court notes that Michigan Court Rule 6.508(D)(3) appears to indicate that Petitioner *may*, in fact, be entitled to bring a second motion for relief from judgment upon a showing of cause and prejudice.  Assuming this interpretation is accurate, the determination whether Petitioner can satisfy the requirements of a particular Michigan court rule seems to be a matter for the courts of the State of Michigan to decide.  *See, e.g., Lukity v. Elo*, 2000 WL 1769507 at *4 (E.D.Mich., Oct. 10, 2000) ("[g]iven the inability to conclude that there is an absence of available state corrective procedures, the principles of federal-state comity dictated by the exhaustion doctrine compel this Court to defer to the State of Michigan to interpret its own postconviction statute").  The Court notes, however, that this is an approach with which the Sixth Circuit disagrees.  *See Dorch v. Smith*, 105 Fed. Appx. 650 (6th Cir., June 25, 2004) (finding that petitioner was unable to file a second motion for relief from judgment pursuant to M.C.R. 6.502(G)); *Paffhousen v. Grayson*, 2000 WL 1888659 (6th Cir., Dec. 19, 2000) (same); *Bostic v. Abramajtys*, 1999 WL 96738 (6th Cir., Feb. 3, 1999) (same).

[4]  Furthermore, even if it is assumed that Petitioner has not procedurally defaulted this claim, and that such is instead simply unexhausted, the Court would recommend in the alternative that this claim be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2) (indicating that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

*Clemmons v. Sowders*, 34 F.3d 352, 358 (6th Cir. 1994), and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.*

Pursuant to Federal Rule of Evidence 701, a lay witness may offer opinion testimony, based upon their own "perception," where such may be "helpful to. . .determining a fact in issue." Fed. R. Evid. 701.[5] Where there exists "some basis for concluding that the witness is more likely to correctly identify the defendant from [a] photograph than is the jury," the witness may offer his opinion as to the identity of the individual depicted in a particular photograph. *See United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005). Accordingly, if the surveillance photographs from which an identification is attempted "are somewhat blurred" and reveal "only part of the robber's face," lay witness opinion testimony as to the identity of the individual depicted in the photograph is appropriate. *Id.*[6]

The surveillance photographs in this case are blurry and reveal only one side of the assailant's face. (Dkt. #27). The assailant was also wearing a cap and hooded sweatshirt which shielded a portion of his head and neck. (Dkt. #27). The witnesses in question testified that they had known and interacted with Petitioner for significant periods of time. These witnesses further testified that based upon such knowledge and interaction they were able to offer a knowledgeable

---

[5] Michigan has a similar rule of evidence. *See* Mich. R. Evid. 701.

[6] Such testimony appears to, likewise, be admissible under Michigan law. *See, e.g., People v. Gray*, 2001 WL 738411 at *2 (Mich. Ct. App., June 29, 2001).

opinion regarding the identity of the individual depicted in the surveillance photographs.  As the admission of the testimony in question is consistent with both the Federal Rules of Evidence and the Michigan Rules of Evidence such cannot be characterized as violating fundamental fairness.

Furthermore, to the extent that Petitioner argues that admission of this evidence was improper because three of the witnesses were identified as law enforcement officers, the Court is not persuaded.  The Court recognizes that there exists the possibility that a juror may infer that the witnesses in question encountered Petitioner in their capacity as members of law enforcement and that, therefore, Petitioner has a propensity to commit crime.  This argument suffers from two shortcomings, however.  First, as the Michigan Court of Appeals recognized, the trial judge specifically instructed the jury to not speculate regarding the nature or circumstances of the witnesses involvement with Petitioner.  (Trial Transcript, August 21, 2009, 50).  The court further instructed the jury to not "draw any adverse inferences from" such involvement.  (Trial Transcript, August 21, 2009, 50).  It is well accepted that jurors are presumed to follow their instructions.  *See, e.g., Jones v. United States*, 527 U.S. 373, 394 (1999).  Moreover, as the Michigan Court of Appeals observed, Petitioner "has not presented anything from which this court could conclude that the jurors did not or could not follow that instruction."  *Roach*, 2011 WL 240533 at *2.

Second, as is well recognized, the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.  *Bugh*, 329 F.3d at 512-13 ("there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence").  Thus, even if the Court were persuaded that the jurors were unable to follow their instructions regarding this issue, such would still not entitle Petitioner to relief.

14

The Michigan Court of Appeals rejected this claim.  In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

B.      Confrontation Clause

As previously noted, while Brent Faulk and Richard Bates were permitted to offer opinion evidence regarding the identity of the individual depicted in the surveillance photographs, the trial judge prohibited the parties from eliciting testimony from either witness indicating the nature of their relationship with Petitioner.  Petitioner asserts that this particular limitation violated his Sixth Amendment right to confront the witnesses against him.

The Confrontation Clause of the Sixth Amendment, applied to the states through the Fourteenth Amendment, *see Pointer v. Texas*, 380 U.S. 400, 403-05 (1965), guarantees to every criminal defendant the right "to be confronted with the witnesses against him." *Cruz v. New York*, 481 U.S. 186, 189 (1987).  This right entitles the accused to see the witnesses against him face-to-face, and to hear their testimony.  *See Dowdell v. United States*, 221 U.S. 325, 329-30 (1911) (adequate confrontation requires that the accused have the opportunity to see the witnesses against him face-to-face at trial).

The Confrontation Clause insures that each witness "will give his statements under oath - thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Lee v. Illinois*, 476 U.S. 530, 540 (1986).  The Confrontation

15

Clause also permits the jury to observe the witnesses, enabling them to judge by their demeanor on the stand whether they are worthy of belief. *See Mattox v. United States*, 156 U.S. 237, 242-43 (1895). The "main and essential purpose" of the Confrontation Clause, however, is "to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nevertheless, the Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987).

Petitioner has failed to describe how his ability to cross-examine Bates and Faulk was improperly curtailed. It was certainly possible for Petitioner to challenge the basis of Bates' and Faulk's testimony and, by extension, the credibility of their identification without revealing their status as Petitioner's former parole or probation agents. Other courts have reached the same conclusion, finding no confrontation clause violation where a witness was permitted to offer identification testimony, but precluded from sharing his status as the defendant's probation officer. *See, e.g., United States v. Contreras*, 536 F.3d 1167, 1172-73 (10th Cir. 2008); *Brown v. Secretary for the Department of Corrections*, 285 Fed. Appx. 578, 583-84 (11th Cir., July 1, 2008).

Given that the witnesses' involvement with Petitioner was in their capacity as his parole or probation agents, the judge's evidentiary ruling is utterly reasonable. While it is not unreasonable to believe a jury capable of keeping an open mind regarding an individual's contact with a police officer, it is another thing entirely to expect a juror to not draw any adverse inference from an individual's involvement with a parole or probation agent. While the distinction between the two circumstances may be slight, it is nevertheless not insignificant.

The Michigan Court of Appeals rejected this claim. In light of the authority above

and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.**　　　　　**Request for New Counsel**　(Habeas Claim II)

Approximately one month before the start of trial, Petitioner's counsel moved to withdraw as Petitioner's representative.  (Hearing Transcript, July 16, 2009, 3-4).  Counsel's motion was based on Petitioner's desire to be represented by an attorney in whom he had more confidence. (Tr. 4).  Petitioner confirmed his lack of confidence in his attorney's abilities.  (Tr. 6-7).  Finding no merit to the request, the trial judge denied counsel's motion.  (Tr. 8-14).  Petitioner argues that the trial judge's decision reflects an abuse of discretion entitling him to habeas relief.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to. . .the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  While an "essential" element of this right is the right to be represented by "counsel of one's choice," the right to be represented by chosen counsel "is not absolute."  *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007) (citing *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006)).  Because an indigent defendant "has no right to have a particular attorney represent him," the defendant must demonstrate good cause to warrant substitution of counsel.  *Mooneyham*, 473 F.3d at 291.

When considering a defendant's request to obtain substitute counsel, courts must consider the following factors: (1) timeliness of the request; (2) adequacy of the court's inquiry into

the defendant's complaint; and (3) whether the alleged conflict between defendant and counsel is so great that it results in "a total lack of communication preventing an adequate defense." *Id.* The court must balance the defendant's right to counsel of his choice with the public's interest in the prompt and efficient administration of justice. *Id.*

While Petitioner's request may not have been untimely, an assessment of the other two factors weighs against his claim of relief. The trial judge inquired as to the basis of Petitioner's request and discerned no evidence that Petitioner's counsel was incapable of rendering satisfactory performance. There is also no evidence the alleged conflict between Petitioner and his attorney was so great that it prevented counsel from adequately defending Petitioner. Finally, as discussed below, there is no evidence that counsel rendered ineffective assistance.

The Michigan Court of Appeals rejected this claim. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**III.        Ineffective Assistance of Counsel** (Habeas Claim III)

Petitioner argues that the decision by the trial judge denying his attorney's motion to withdraw resulted in a deprivation of the right to the effective assistance of counsel.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). To establish deficient

18

performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.*

(citations omitted).  As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

Petitioner asserts the conclusion that counsel rendered "inadequate performance," but has failed to identify any action or inaction by counsel that constituted such.  Petitioner has likewise failed to articulate how he was prejudiced by his counsel's allegedly deficient performance.  Simply put, Petitioner has advanced no intelligible argument that his right to the effective assistance of counsel was denied.

The Michigan Court of Appeals rejected this claim.  In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**IV.**          **Prosecutorial Misconduct**  (Habeas Claim IV)

In closing argument, the prosecuting attorney made certain remarks which Petitioner asserts deprived him of the right to a fair trial.  When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor."  *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting

*Smith v. Phillips*, 455 U.S. 209, 219 (1982)).   The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also*, *Givens v. Yukins*, 2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).   Thus, even if the challenged conduct was improper, habeas relief is available only where the conduct was "so flagrant as to render the entire trial fundamentally unfair."   *Gillard*, 445 F.3d at 897.

When assessing whether alleged prosecutorial misconduct warrants relief, the Court undertakes a two part analysis.   The Court must first determine whether "the prosecutor's conduct and remarks were improper."   *Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007).   If such is the case, the Court must then determine "whether the impropriety was flagrant and thus warrants reversal."   *Id.* at 759.   When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court considers the following factors: (1) the likelihood that the conduct mislead the jury or prejudiced the accused; (2) whether the conduct was extensive or isolated; (3) whether the conduct was deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial.   *Id.*

The challenged comments fall into two categories: (1) comments regarding the number of times certain witnesses had previously observed or encountered Petitioner, and (2) comments regarding Richard Daly's testimony.

With respect to the first category, Petitioner asserts that the prosecutor inaccurately stated that the witnesses who identified him from the surveillance photograph had met Petitioner

"40, 50, 60 times."  While this statement may have been inaccurate, the prosecutor, in rebuttal, amended his comments and accurately characterized the witnesses' testimony on this matter.  (Trial Transcript, August 21, 2009, 62).  Thus, the prosecutor's initially inaccurate statement was merely an isolated statement of hyperbole that was subsequently corrected.  Petitioner also complains that the prosecutor twice commented that Richard Daly observed Petitioner six times previously.  (Trial Transcript, August 21, 2009, 53, 62).  As the Michigan Court of Appeals correctly concluded, "the evidence plausibly supports the conclusion that Daly saw the defendant twice during two preliminary examination hearings, once at trial, twice on the day of the robbery, and once during the photographic lineup."  *Roach*, 2011 WL 240533 at *3.

Petitioner's argument concerning the prosecutor's comments on Richard Daly's testimony is more difficult to discern.  As noted above, two days after the robbery, Daly was shown a photographic lineup.  While Daly was unable to definitively identify Petitioner as his assailant, he identified Petitioner as the person who "probably" robbed the store.  In his rebuttal argument to the jury, the prosecutor made the following comments which Petitioner finds objectionable, "at the scene, he picked five out.  Mr. Marks [defense counsel] got him to say it was number one, but then Mr. Daly said, 'but I know it's number five.'"  (Trial Transcript, August 21, 2009, 63).  On cross-examination, Mr. Daly was questioned about the photographic lineup he was shown two days after the robbery.  (Trial Transcript, August 20, 2009, 125-27).  The subsequent exchange between Daly and defense counsel is largely unintelligible with Daly even stating to counsel that he did not understand his question.  (Tr. 126).  What is discernable from this exchange, however, is that while Daly may have been initially confused regarding the line of questioning, Daly ultimately stated that he selected Petitioner, whose photograph was labeled as number 5 in the photographic array, as the

22

person who likely committed the robbery in question.  (Trial Transcript, August 20, 2009, 126-27; Trial Transcript, August 21, 2009, 36-37).  This is entirely consistent with the prosecutor's challenged comments.

In sum, Petitioner cannot establish that the comments in question denied him the right to a fair trial.  With one exception, the prosecutor's comments were legitimate comments on the evidence.  As for the prosecutor's inaccurate statement about the number of times certain witnesses encountered Petitioner, such was merely an isolated statement of hyperbole that was subsequently corrected.  The Michigan Court of Appeals rejected this claim.  In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**V.**  **Ex Parte Contact**  (Habeas Claim V)

Petitioner asserts that his right to a fair trial was violated "where after the commencement of jury deliberations, the trial judge allowed ex parte contact with the jury from the prosecutor, off the record."  In support of this claim, Petitioner references the following exchange, between the trial judge and the two attorneys, which occurred immediately after the jurors exited the courtroom to begin their deliberations:

The Court:      Any exceptions to the instructions as given, then?  Prosecution?

Mr. Buscher:  Not to the instructions, sir.

The Court:      And Defense?

23

Mr. Marks:      No, your honor.

The Court:      And if they want the DVD, it is a DVD, right?

Mr. Buscher:   It has to be placed on [a] hard drive. I can actually give them the laptop and just hook on the power cord and show her how to use it, Judge.

Mr. Marks:      Okay.

The Court:      Okay. All right. All right, we're in recess, then.

(Trial Transcript, August 21, 2009, 78-79).

Petitioner first raised this claim in his post-conviction motion for relief from judgment. The trial judge denied this claim as follows:

> Regarding the first issue raised, the Assistant Prosecutor never entered the Jury Deliberation Room during deliberations. The record merely reflects the fact that if the jurors requested the DVD which was entered into evidence to be replayed during deliberations, since the Court's audio system could not play the DVD, the Bailiff would use the prosecution's computer to replay the DVD. There is no error.

(Dkt. #32).

There is no indication in the record that the jurors ever requested the DVD in question or that the prosecutor, or anybody else, had any contact with the jurors while they were deliberating. Petitioner has failed to present any evidence suggesting otherwise. The trial judge rejected this claim. The Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

24

**VI.**          **Voir Dire**  (Habeas Claim VI)

Finally, Petitioner asserts that his right to a fair and impartial jury was violated by the trial judge's failure to adequately question a particular juror during voir dire.  Juror #811, Dannette Feltner, was not initially selected from the jury venire as a potential juror.  (Trial Transcript, August 20, 2009, 5-6).  Feltner was subsequently selected as a potential juror after another individual was excused from service.  (Tr. 37).  After Feltner assumed her seat in the jury box, the trial judge asked her, "Have you been able to hear the questions put to the other potential jurors?  Anything you need to bring to our attention that may affect your ability to be a fair juror?"  (Tr. 37-38).  The transcript does not reflect Feltner's response.  (Tr. 37).  The judge immediately thereafter asked defense counsel if he had any "additional questions" regarding Feltner's qualifications.  (Tr. 37).  Counsel responded, "no" and the jury selection process continued.  (Tr. 37).  Feltner was one of the individuals ultimately selected to serve on Petitioner's jury.  Petitioner argues that his constitutional right to be tried by a fair and impartial jury was denied because the trial judge failed to receive from Feltner responses to the questions noted immediately above.

The Sixth Amendment commands that every criminal defendant "shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  In addition to the safeguards articulated in the Sixth Amendment, the Constitution's due process protections likewise afford to criminal defendants the right to be tried by an impartial jury.  *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (citing *Morgan v. Illinois*, 504 U.S. 719, 727 (1992)).  As is recognized, the voir dire process is designed to protect this right "by exposing possible biases, both known and unknown, on the part of potential jurors."  *Mitchell*, 354 F.3d at 520 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)).

When the ability of a juror to serve impartially is at issue, "the relevant question is 'did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" *Mitchell*, 354 F.3d at 520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)).  In the context of a petition for writ of habeas corpus, a trial court's assessment regarding a juror's ability to serve impartially is a factual finding "entitled to a presumption of correctness, rebuttable only upon a showing of clear and convincing evidence." *Mitchell*, 354 F.3d at 520.

Petitioner first raised this claim in his post-conviction motion for relief from judgment.  The trial judge denied this claim as follows:

> Regarding the second issue, the record simply does not support the Defendant's claim of a constitutional violation.  The Trial Court is equipped with a video recording system.  It is not unusual during the *voir dire* process for the microphones not to pick up all of a juror's comments made in response to questions.  This is especially so when the juror, as is the case in this matter, is seated in the back row, farthest from the microphone.  If there had been any indication from this juror that she could not be a fair juror, it would have been pursued by the Court and/or the attorneys.

(Dkt. #32).

The record reflects that Feltner was seated in seat 12 which is not inconsistent with the trial judge's comment that Feltner was seated "farthest from the microphone." (Trial Transcript, August 20, 2009, 37).  The record also indicates that the proceedings were not transcribed simultaneously, but were instead recorded to videotape from which a transcript was later compiled. (Tr. 146).  This likewise supports the trial judge's comments regarding the nature of the court's method of recording events.

At the outset of jury selection, the potential jurors were asked, "do you solemnly

swear or affirm that you will truthfully and completely answer all questions about your qualifications to serve as jurors in this case." (Tr. 5). The record reflects that the entire jury panel responded, "I do." (Tr. 5). Petitioner offers no evidence that Feltner declined to answer this particular question or that her response was other than what is recorded in the transcript. After the jury was selected, but before the commencement of proceedings, the jury members were asked, "do each of you solemnly swear or affirm that in this action now before the Court, you will justly decide the questions submitted to you, and unless you are discharged by the Court from further deliberations, that you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the Court, so help you God?" (Tr. 57-58). The record reflects that the jurors responded, "I will." (Tr. 58). Petitioner offers no evidence that Feltner declined to answer this particular question or that her response was other than what is recorded in the transcript.

In sum, Petitioner has failed to present any evidence rebutting the presumption of correctness that attaches to the trial judge's assessment that Feltner was able to serve as a fair and impartial juror. Thus, Petitioner cannot demonstrate that his right to be tried by a fair and impartial jury was violated by the trial judge's conduct during voir dire. Furthermore, to the extent Petitioner's claim is interpreted as seeking relief on the ground that Feltner intentionally concealed information by refusing to answer voir dire questions, the result is the same as Petitioner has presented no evidence suggesting that an accurate response to such questions would have provided a basis to discharge Feltner for cause. *See Mitchell*, 354 F.3d at 520-21 ("in order to obtain a new trial based on a juror's non-disclosure during voir dire, the defendant must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct

27

response would have provided a valid basis for a challenge for cause").

   The trial judge rejected this claim.  In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.


## CONCLUSION

   For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Roach's petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

   OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

          Respectfully submitted,


Date:  August 3, 2015        /s/ Ellen S. Carmody
                ELLEN S. CARMODY
                United States Magistrate Judge